524 So.2d 93 (1988)
Maureen McMahon SICKINGER
v.
NEW ORLEANS PUBLIC SERVICE, INC. et al.
Nos. CA-8361, CA-8360.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
*94 Richard A. Tonry, Bruce G. Reed, Chalmette, for Sickinger.
Floyd F. Greene, Leonard A. Young, New Orleans, for NOPSI et al.
Before GULOTTA, C.J., and LOBRANO and WARD, JJ.
GULOTTA, Chief Judge.
In these consolidated tort suits by a bus passenger injured in two separate accidents, New Orleans Public Service, Inc. (NOPSI) appeals from adverse judgments in the sums of $111,595.00 for injuries sustained in the first accident and $10,333.50 from the second. We affirm.

BACKGROUND
On July 28, 1980, Maureen Sickinger was a passenger on a lakebound NOPSI bus on Canal Street in New Orleans that stopped suddenly to avoid hitting an automobile attempting to make a left turn in front of the bus at an intersection near Claiborne Avenue. Although the bus driver managed to halt short of a collision, plaintiff, who was standing in the aisle of the bus and holding on to an overhead bar, was twisted by the force of the abrupt stop and sustained a whiplash injury of the neck. Mrs. Sickinger and her husband filed suit against NOPSI and its driver for this injury on October 12, 1980.
While the first suit was pending, plaintiff was injured in a second accident on February 17, 1982, when the NOPSI bus in which she was riding collided with a truck owned by Frito-Lay Co., Inc. at the intersection of Canal Street, City Park Avenue, and Canal Boulevard. At the time of impact, plaintiff was wearing a cervical collar and felt a "jolt" and immediate "spasms" as she sat in her seat. Plaintiffs' second suit for damages was directed against NOPSI, Frito-Lay, Inc., and the drivers involved.
The two suits were consolidated and tried on the merits. In separate judgments, the trial judge found NOPSI solely liable for $111,595.00 in damages from the first accident, and awarded further damages of $10,333.50 for the second accident, apportioning fault between Frito-Lay and NOPSI, in the second accident. In written reasons, he concluded that plaintiff had sustained severe and permanent injuries as a result of the first accident and that the second had caused some aggravation of those injuries.
Appealing, NOPSI contends, on credibility grounds, that the trial court erred: 1) in finding that the first alleged accident even occurred; 2) in failing to apply the doctrine of "sudden emergency" to exonerate NOPSI if in fact the accident did happen; and 3) in failing to apportion the damages more equally between the two accidents.

OCCURRENCE OF ACCIDENT
We cannot say the trial judge was clearly wrong in concluding that plaintiff was injured in an accident on July 28, 1980.
Plaintiff testified that on this date she was a standing passenger in a NOPSI Canal Street bus traveling lakebound in the neutral ground lane reserved for bus traffic. According to plaintiff, when a traffic light turned green, the bus driver "floored" the accelerator, sounded her horn twice, but continued "at a fast pace" before she "slammed" on the brakes, stopping the bus abruptly at a U-turn intersection. Sickinger then saw an automobile on the right side *95 of the bus make a U-turn in front of the bus. Plaintiff stated that as a result of the abrupt stop she was thrown in a counterclockwise direction, heard her collar bone "snap", and immediately experienced pain. Upon arriving home, she called NOPSI's office to report that she had been injured.
Plaintiff's testimony was largely corroborated by fellow passengers. According to Kathleen Babin, the bus was traveling at a faster than normal speed for "some distance" before the driver slammed on the brakes, throwing her into a seat and bruising her leg. Babin noticed that a car was stopped half-way into the path of the bus after making a left turn from the right side of the bus. She recalled that plaintiff told her that she had hurt her neck or twisted it badly. Another passenger, Joan Holub, likewise stated that the bus was "going fast" before it suddenly halted because a car was "coming across" the street.
Joe Lee Waiters, the bus driver, had no knowledge of an accident occurring on or about 4:40 p.m. on the relevant date, and did not recall making a sudden stop to avoid a collision. The driver further testified that the bus has a device called a "governor", which monitors the speed of the vehicle and prevents it from accelerating rapidly or reaching a high speed.
Considering the evidence, we cannot say the judge erred, based on credibility, in accepting plaintiff's testimony and rejecting the conflicting evidence. Sickinger's testimony, essentially corroborated by her fellow passengers, sufficiently establishes that the NOPSI bus abruptly stopped to avoid colliding with a car turning into its path. Although no impact occurred, the evidence establishes that the plaintiff-passenger received a jarring injury as she attempted to maintain her balance during the sudden shift in movement of the bus. Accordingly, we reject NOPSI's claim that no showing was made that plaintiff met with an accident on July 28, 1980.

SUDDEN EMERGENCY
NOPSI seeks to be exculpated from liability based on the doctrine of "sudden emergency" created by the turning of a "phantom" vehicle into the path of the bus.
Common carriers are charged with the duty of exercising the highest degree of care to their passengers and are liable for the slightest negligence causing injury to them. Simms v. Estridge, 346 So.2d 300 (La.App. 4th Cir.1977). Although a carrier confronted with a "sudden emergency" through no fault or negligence of its own will not be held liable for damages or injuries sustained by its passengers, this doctrine does not apply where the bus driver creates the emergency situation by failing to reduce his speed to avoid an imminent collision with a turning vehicle. Simms v. Estridge, supra; Weir v. Gasper, 459 So.2d 655 (La.App. 4th Cir.1984), writ denied 462 So.2d 650 (La.1985).
In written reasons for judgment, the trial judge stated in pertinent part:
"NOPSI has failed to exonerate itself from liability for the July 28, 1980 accident. The driver saw the car and should have but did not slow her speed. When the car kept turning, the driver had to slam on her brakes throwing several of the standing passengers forward and injuring plaintiff."
Based on the testimony of plaintiff and her fellow passengers, we cannot say the trial judge erred. Because the bus driver caused the abrupt stop by traveling at an excessive speed under the circumstances, NOPSI cannot invoke the sudden emergency doctrine to exculpate itself from liability. See Simms v. Estridge, supra.

CAUSATION
A more difficult question is the apportionment of damages between two accidents. While the total Quantum of damages is not in dispute, NOPSI contends that the trial judge erred in attributing the greater part of plaintiff's damages to the first accident, instead of dividing the damages "more equally" between both incidents. Based on the medical testimony, however, we find no merit to this contention.
*96 In his reasons for judgment, the trial judge stated, in pertinent part:
"It is difficult to assess plaintiff's damages. Dr. Dabazies saw her twice and referred her to Dr. King, an orthopedist at LSU specializing in spine surgery. He believes plaintiff sustained a disc rupture, without herniation, at the C5-6 level. As long as plaintiff can tolerate her pain, he does not feel surgery is indicated. Her symptoms have not improved.
From May 1, 1981 to August, 1983, she saw Dr. Sacks, a chiropractor whose testimony was worthless. From May 14, until July, 1984 she was treated by Dr. Beverly Vasconcellos who I found knowledgable, accurate, fair and honest. By x-ray interpretation she identified three discreet ligament tears. These would not heal and would render plaintiff permanently susceptible to pain caused by the stress of ordinary life.
Neither Dr. King who saw plaintiff before and after nor Dr. Vasconcellos who treated her after the second accident, were impressed with the effects of the second accident. Only plaintiff feels the second accident caused a severe aggravation. It should be noted Dr. King had diagnosed the ruptured disc before the second accident.
Plaintiff will be awarded $100,000.00 for the first accident and $10,000.00 for the second. Special damages following the second accident will be ascribed between the two accidents by the same ratio.
Practically all of the lost wages were due to the first accident, and none will be ascribed to the second.
None of the experts attributed any substantial aggravation to the second accident, and NOPSI will be cast alone for their expert fees in the suit for the first accident."
These findings are consistent with the evidence presented.
Dr. Beverly Vasconcellos, a chiropractor, testified she first saw plaintiff on May 14, 1984. According to this witness, plaintiff had suffered a post-traumatic cervical thoracic strain and chronic headaches. X-rays indicated a tearing of anterior ligaments of the spine. Dr. Vasconcellos indicated that when she saw plaintiff in May and June, 1984, she was essentially treating her for a temporary flare-up of a preexisting permanent condition. This witness was of the opinion that plaintiff's permanent problem of ligament damage was compatible with the July 28, 1980 accident, and that the second accident did not substantially aggravate the preexisting condition since Sickinger had told her that she was "not particularly injured" at that time.
Plaintiff's testimony was not inconsistent with Dr. Vasconcellos's obversations. Mrs. Sickinger testified that she experienced pain in her face, head, neck, shoulders, and the length of her spine on the day of the first accident on July 28, 1980. She sought medical help immediately, took prescribed muscle relaxants, underwent physical therapy, but had limited motion in her neck and was never free of pain, including migraine headaches. In the second accident on February 17, 1982, plaintiff immediately experienced spasms in her head, back, and shoulder blades. According to plaintiff, the second accident increased her pain substantially.
The testimony of Dr. Eugene J. Dabazies, an orthopedic surgeon, is supportive of a conclusion that plaintiff sustained a neck and back injury resulting from the 1980 accident. He first saw plaintiff on September 8, 1980, approximately six weeks after her first accident. Dr. Dabazies felt that plaintiff's primary problem was a neck sprain, a soft tissue injury that would resolve itself. In later visits on October 20 and November 17, 1980, and on January 7, 1981 and February 9, 1981, after plaintiff continued to complain of headaches and pain in her back and shoulder, this physician referred her to another doctor.
Dr. Andrew Graeme King, an orthopedic surgeon, saw plaintiff on referral from Dr. Dabazies on February 20, 1981. According to Dr. King, Sickinger complained of persistent pain in her neck from the July 28, 1980 accident. An examination revealed pain in the mid-thoracic spine, muscle *97 spasm, and a range of spinal motion that was three-fourths normal in all directions, with pain resulting from movements beyond that range. Furthermore, the lack of normal movement at the C5-6 articulation indicated some inflammation. The witness saw plaintiff subsequently on March 27, April 10, and August 21, 1981. During all of these visits plaintiff still experienced neck pain and headaches, as well as pain between her shoulders. In Dr. King's opinion, plaintiff sustained a ruptured but not herniated cervical disc which was secondary to her whiplash type of injury. Although he later saw plaintiff on May 20, 1983, after her second accident on February 17, 1982, her symptoms were similar to those she had manifested previously. Dr. King stated he was unaware of the second accident and did not reach any opinion as to which accident caused "how many symptoms".
When a plaintiff is injured in two separate accidents, the ultimate issue of medical causation is a factual question. McCreary v. Commercial Union Ins. Co., 372 So.2d 745 (La.App.4th Cir.1979). Based on the testimony of the treating physicians and the chiropractor, we conclude that the trial judge correctly attributed the greater measure of plaintiff's damages to the first accident.
Accordingly, the judgment is affirmed.
AFFIRMED.